**HILL et al. *vs.* LA CROSSE & M. R. R. CO.**

Heard April 4.]                                    [Decided June 4, 1860.

### *Lien—Practice—Railroads.*

The plaintiffs made a contract with a railroad company to construct depot buildings for the company in the city of Milwaukee, and to be paid therefor as the work progressed. The buildings to be put up in sections. One section was put up,

Hill et al. vs. La Crosse and M. R. R. Co.

and the company failing to make the payments, the plaintiffs filed their petition for a lien upon the block on which the building stood, and commenced an action and obtained a judgment against the company : Held that the judgment was a lien upon the building, and upon the block to the extent of one acre of land, notwithstanding the track of the road terminated upon the same.

Where the plaintiffs had obtained a judgment by default against the defendant, upon a mechanics' lien; and at a subsequent term the defendant applied for a modification of the judgment, by reducing the quantity of land to which the lien extended, and also by deducting from the judgment the amount of a judgment subsequently recovered by a sub-contractor of the plaintiffs against the same defendant: Held that where relief is sought under the provisions of § 38, chap. 125, R. S., if it involves a trial of the merits of the action, or any part thereof, the relief must be given by opening the judgment upon just terms, and allowing a trial in the ordinary way, and not by a trial of the merits upon affidavits. But where the application is to supply an omission, or to amend the proceeding to conform to the provisions of law, not involving the merits of the action, the amendment may be made upon affidavits.

'The doctrine of some cases that a railroad is an entire thing, cannot be applied so as to cut off a mechanic's lien upon a depot building. The property to which such lien attaches does not become a part of the entirety for that purpose, until the lien is discharged, any more than it would if the lien had been created by a mortgage executed by the company.

A building built for a railroad company, is as clearly within the letter and spirit of the statute, concerning the lien of mechanics, &c., as any other building. The object of the act was to furnish protection to those who expended their labor and materials in improving the property of others; and railroads are not an exception to this rule.

*La Crosse and Mil. Railroad Co. vs. Vanderpool, supra,* 119, considered and distinguished.

The doctrine that a mortgage of a railroad and its franchises, attaches to all subsequently acquired property, questioned on the ground that it would work great injustice to other creditors.

Contractors for the construction of a railroad depot building, contracted for material of a person who furnished them, and then filed his lien against the building, and also commenced his action for the amount against the railroad company, but before he obtained judgment, the contractors obtained a judgment by mechanics' lien upon the same building, for an amount including the amount of the sub-contractor's judgment. Both judgments were entered by default for want of answers : Held that these two judgments were not incompatible. The sub-contractor, notwithstanding his judgment, might have sued the contractors for the same debt, and recovered it out of their property; therefore the several judgments should remain, and the court should provide for the proper distribution of the funds arising from the sale of the property.

On the 13th of June, 1857, the defendants entered into a contract with the plaintiffs for building their depot building at Milwaukee. The plaintiffs were to furnish all the materials and finish it in 21 apartments, under the direction and to the satisfaction of the engineer of the company. The first one hundred feet front was to be completed by the 1st of November, 1857, and the remaining parts by the 1st of October, 1858, and the 1st of December, 1858; for which the defendants were to pay $19,150; 85 per cent. of which was to be paid upon monthly estimates of the engineer of the company; except that the part to be completed by the 1st of December, 1857, was to be fully paid for on its completion. On the 22d September, 1858, the engineer certified three of the twenty feet fronts were completed, and the amount due for the same was $13,356 82. For the recovery of this sum this action was brought, under the mechanic's lien law. The lien therefor was filed on the 30th of June, 1858, and on the 17th of August, 1858, the summons and complaint were served, and the defendants making default, judgment was rendered on the 27th of September, 1858, for $13,395 73, including costs, and the lien declared to attach to the building, and the land in block 41, in the second ward of the city of Milwaukee; and ordered the land to be sold to pay the judgment. On the 22d of November the sheriff of the county advertised the land for sale, describing it as the building in the block, and the land to the extent of one acre, to be sold on the 8th of January, 1859.

On the 7th of January, 1859, the secretary of the company made an affidavit showing there were ten lots in the block, 40 feet in width, running from the street to the river; that the building was on lots 5, 6, and part of 7, and between the street and track of the railroad, and that the ground north of the building was not necessary for the enjoyment and occupancy of the building; that the railroad track ran between the building and the river; that the building was 55 feet wide, and the distance from it to the river was 95 feet; and that the building was constructed for the use of stores and offices.

The affidavit further set forth, that one Joseph Carney, a sub-contractor under the plaintiffs, had obtained a judgment which was a lien upon the premises for $1,630 for a debt due by the plaintiffs to Carney for materials furnished for the building, no part of which amount had been credited by the plaintiffs to the defendants; that Carney's petition for the lien

was filed on the 12th of November, 1857, and his judgment entered September 29th, 1858, two days after the judgment of the plaintiffs. This judgment also appears to have been taken by default. Some excuses are made for allowing the judgment to be taken by default, but as they do not enter into the consideration of the court, they are omitted.

On this affidavit the court made an order referring the matter to a surveyor to determine and report upon the situation of the building and premises. The surveyor made his report the same day, but as it was not satisfactory, the court ordered a postponement of the sale until 26th, and ordered a re-survey. On a subsequent day the circuit court made the following order:

"The sale of the premises mentioned in the judgment in this cause having been postponed from time to time by the order of the court, and the motion of the defendant having been fully argued by the counsel of both parties, and the court being thereupon sufficiently advised, it is ordered and adjudged by the court, that the amount of the plaintiffs' judgment in this cause be reduced and remitted to the sum of seventeen hundred and twenty-four dollars sixty-nine cents, being the amount for which Joseph Carney, a subcontractor under the said plaintiffs, sold a part of the said premises, by virtue of his lien and judgment in the county court of this county, on the first day of December last past; so that the said judgment of the said plaintiffs in this cause shall stand and be for the sum of eleven thousand six hundred and seventy-one dollars two cents, besides their costs, which amount to the sum of $35 00.

"And it is further ordered and adjudged, that the said judgment of the plaintiffs in this cause be further reduced and remitted, so that the same shall be adjudged a lien upon all the right, title and interest which the defendant had on the 20th day of June, 1857, in and to that part of block forty-one mentioned in the said judgment, described as follows, and no more, that is to say: All that part of lots five and six, and of the north half of lot seven, which lies westward of a line drawn across the said block parallel to the west line of Third street, and distant from such west line of Third street sixty feet.

"And it is further ordered and adjudged, that the said judgment of the plaintiffs in this action be amended according to the provisions of this order."

From that order this appeal is taken.

*Levi Hubbell* and *E. Mariner,* 'for the appellants.

The appellants allege, that the circurt court *erred* in its order " reducing and remitting" the judgment of the plaintiffs below, " so that the same shall be adjudged a lien upon all the right, &c., which the defendant had, &c., in and to that part of block 41, mentioned in said judgment, described as follows, *and no more,* that is to say :   All that part of lots 5 and 6, and the north half of lot 7, which lies westward of a line drawn across the said block parallel to the west line of Third street, and distant from said west line of Third street, sixty feet."

The appellants contend that they were entitled to a judgment for all the respondents' rights, &c., in and to either, the whole of block 41, as specified in the building contract ; or the whole of lots 5, 6 and 7, as the same are plotted and laid out on the city maps and plats ; or so much of the " lots" on which the building " is situated," as may be reasonably necessary for the advantageous and profitable use of the said building.

The mechanic's lien law of 1842, made no mention of the lot or land on which the building was situated ; yet the supreme court, in *Pyncheon vs. Dean,* 3 Chand., 19, held that the purchaser at a sheriff's sale, upon a judgment under that law, would " take all the debtor's right and interest, not only in the building, but in so much of the ground as it stands upon, as may be necessary for its ordinary and proper occupation and use." The trial of the case at circuit had taken place, and a similar ruling been made, before the statute of 1850 was adopted. The principle was a subject of general discussion at the bar, and the legislature, in the act of 1850, was well understood to have designed, not only to make the law on that point more clear and definite, but to give in fact, with the lien on the building, a lien upon so much of the land connected with it, as might " be necessary for its ordinary and proper occupation and use."

The construction contended for, is strongly supported by decisions in other states. *The Bank of Charleston vs. Curtis,* 18 Conn. R., 348 ; *Choteau et al., vs Thompson et al.,* 2 Ohio St., 123 ; *Holdship vs. Abercrombie,* 9 Watts, 54 : *Beckel vs. James,* 7 Watts, 9 ; 5 id., 487 ; *Van Dyke vs. Van Ess,* 1 Halsted, 485.

The mechanic's lien, in this case, is in the nature of a mortgage, and the judgment similar to a decree of foreclosure The sale, which has already taken place, of a part of the premises covered by the lien, does not preclude a further sale under a future order for that purpose. Nor does the present appeal affect the general judgment, but merely the order of sale, which, though incorporated in, is rather a sequence than part of the judgment. At all events, being wrong, and being patched upon the judgment, it may be severed from it, and the judgment restored to what it was, with a further order of sale, as this court shall deem just. *Fitch vs. Baker*, 23 Conn., 567; *Sweet vs. James*, 2 R. I., 281.

*N. J. Emmons*, for the respondents.

The court had ample power to modify and correct its judgment in the way it did; and it was eminently just and equitable that it should be done. If by the old rules of practice, there could have been any doubt about the propriety of the order appealed from, section 82 of the Code has removed it. Code, Carter's edition, page 51.

I cannot foresee what objection is to be urged against the order compelling the plaintiffs to submit to a deduction from their judgment of the amount of Carney's judgment; nor upon what theory of law or ethics it is to be maintained that there should be two recoveries for the same demand. Carney, as a sub-contractor, had the same right to proceed for the enforcement of his supposed lien as the appellants. Rev. Stat., 891, sections 1, 2 and 3.

The most important, though not doubtful points raised are, whether the appellants had any lien in virtue of their contract with the railroad company, and the work done thereunder; and if they had, the extent of such lien with reference to the land adjacent to the building.

The appellants had no lien under the mechanic's lien law The complaint shows that the building contracted for was contemplated for a depot, and to contain rooms and apartments suitable for the transaction of the business of the company. The building is a part of the road itself, and the lien cannot from necessity attach. A question precisely akin to this was passed upon in *Dunn vs. North*, 24 Mo., 493; and it was there held, that upon grounds of public policy and necessity, a mechanic's lien did not attach to the structures forming part of the road. The reasoning of that case, it

seems to us, is unanswerable, and, if followed here, is conclu-
sive of the present case; because, if there was no lien at all, of
course the appellants cannot complain, or set up that in award-
ing them a lien, it has been confined to too narrow limits.

It will hardly be contended that the lien could extend to the
entire road; and because it cannot, none can exist.   As be-
fore intimated, this building is a part of the road itself, insep-
arable and indivisible from it.   The depot buildings and
grounds, shops, road bed, rolling stock, and all the parapher-
nalia of a railroad, with its rights, privileges and franchises,
are parts of an entire thing.   It is the integer, they are the in-
tergal parts.   They cannot be disintegated by the remedies
of creditors upon execution.   This has been frequently de-
termined.   *Woodruff vs. Winslow*, 18 B. Monroe; *Ludlow
vs. Hurd*, 6 Am. Law Reg., 27: *Coe vs. Hart*, 6 Ib., 27;
*Farm. L. and T. Co. vs. Hinchman*, Am. Railway Journal,
March 6, 1858; 3 Green's Ch., 377.

The circuit courts of the U. S. for Michigan and Illinois,
have made several decisions annoucing the same doctrine, re-
straining execution sales against the property of the *Mich. S
and N. Ind. R. Co.*

But conceding for the argument's sake, that there is a lien
upon the building, it cannot extend to the adjacent grounds.
To extend it to the entire block, as is contended it should be,
would in the first place result in embracing more than an acre
of ground, to which such liens are limited by the statute.
Computing from the size of the lots in the block, as shown by
Schumacher's survey, will prove this.   And in the next place,
if this building can for the purposes of this remedy be separ-
ated and detached from the road itself, then the grounds ex-
cluded are in no wise or sense appurtenant to the building,
and are not necessary to its proper use and enjoyment.


*By the Court*, PAINE, J.   This action was brought to en-
force a mechanic's lien for building a part of a brick block,
which if completed according to the contract, was to have
constituted the depot of the respondents, in the city of Mil-
waukee.   The contract describes the land on which the build-
ing was erected, as block 41, in the 2d ward of that city.
This was composed of a number of lots, and was bounded

on the east by the Milwaukee river, and on the west, by Third
street.   The contract required the appellants to erect the build-
ing along the whole front of the block, upon the street, being
four hundred and twenty feet, and to the depth of about fifty-
five feet.   The appellants erected the building along a part of
the front, when by default of payment on the part of the
company they were unable to proceed, and this suit was
brought to enforce the lien for the part built.   Judgment was
recovered by default, and was entered for a lien upon the in-
terest of the company in the whole block 41.   An applica-
tion was subsequently made on behalf of the company for a
modification of the judgment, upon affidavit, setting forth
that the rail road track was laid across the east part of the
block between the buildings and the river, that the whole
block was not neceessary or convenient for the use of the
buildings erected which were designed for stores and offices,
and that one Carney, a sub-contractor had recovered a judg-
ment against the company for $1630,87, which had not been
credited by the appellants.   Upon this application the court
referred it to a surveyor to report upon the situation and char-
acter of the premises, and upon his report, modified the judg-
ment so as to confine the lien to the west sixty feet of the par-
ticular lots on which the building as far as erected actually
stood, and also by deducting from it the amount of the Car-
ney judgment.   From this modified judgment, this appeal is
taken.

The question is made whether it is proper as a matter of
practice, for the court at a subsequent term, to modify a final
judgment.   The respondent's counsel contend that the power
given by sec. 38, chap. 125, R. S., 1858 is ample for the purpose.
We think where an application is made under that section to
be relieved against a judgment, if the relief sought involves a
trial of the merits of the action or any part thereof, it con-
templates that the relief is to be given by opening the judg-

ment, upon just terms, and allowing a trial in the ordinary way; and not that the court should try the merits on affidavits, and modify the judgment according to its conclusion. But where the application is under the other clauses, to " supply an omission," or to amend proceedings taken, " so as to make them conform to the provisions of law," and not involving the merits, of course a trial would not be necessary, but the court on being properly informed could make the necessary modification. And we are inclined to think that in this case, where the defendant did not dispute the debt, nor the right to the lien, but only asked that it might be limited to the proper bounds ; if judgment had been taken for a lien beyond those bounds, the court might on such an application, so modify it as to make it conform to the law.

The respondent's counsel contended that the appellants could not complain of the reduction of the lien, for the reason that by law they were not entitled to any lien whatever. This position is urged upon the grounds of public policy. It is said the public are interested in preserving railroads in an operative condition, and that if these liens are allowed to attach to their buildings, or creditors allowed to levy upon and sell their cars, or other personal property necessary to the operation of the road, they will be rendered incapable of subserving the public interest; and several cases are referred to in which it has been held that judgment creditors could not levy on and sell the cars, or any other personal property of the company, necessary for the operation of the road, upon the ground that the railroad must be considered as an entire thing, and public policy required that these articles should not be severed from it. But whatever merit there may be in this doctrine we are clearly of the opinion, that it cannot have the extent here claimed for it. And on the contrary it cannot be applied at all except so far as the property has become entirely the property of the company divested of all specific

liens. When that has been done, if there is any reason for saying that a general creditor, must take all or nothing, that is one thing. But it is entirely a different thing to say when the company by the very act of acquiring a particular portion of property, either by contract or by the force of law, creates a specific lien in favor of the vendor or manufacturer, or would create it unless hindered by public policy, that such lien shall not attach for that reason. Suppose a company furnishes materials to a manufacturer of cars or engines, and contracts with him to build them, and he does so upon his own premises. The company takes possession without paying for his labor, and he replevies them; would the doctrine referred to in regard to a levy upon cars, after they have once become fully the property of the company, be applicable there? Could the company say that the railroad with all its cars, &c., was an entire thing, and therefore the mechanic's lien did not attach? It seems obvious that the doctrine cannot support such a conclusion.

Suppose that in this case the company had acquired the title of block 41 from the appellants, and had, at the same time, made this contract, and executed a mortgage on the block to secure the purchase money and payment upon the contract. Suppose the appellants had completed the building and expended their labor and materials to the amount of $79,000; could the company then hold it against a foreclosure sale, on the ground that it was part of the railroad, and that public policy would not permit the railroad to be severed? No one would for a moment entertain such an idea. The obvious answer to such a claim would be that, as against the specific lien, it was not a part of the entirety. And there can be no conceivable reasons of public policy that should prevent the enforcement of such specific lien, by means of which the company had acquired the very property itself.

And we can see no distinction, upon principle, between al-

lowing such a lien to be created by the mortgage of the
company, and allowing it to be done by the force of the stat-
ute. A building built for a railroad company is as clearly
within the letter and spirit of the statute, as any other build-
ing. The object was to furnish a protection to those who
expended their labor and materials in improving the prop-
erty of others. Is there any thing in public policy that re-
quires, or should permit railroads to be built at the expense
of defeating this object? If there is, we fail to perceive it, and
shall recognize no such policy till the legislature enacts it
into a positive law  We have decided at the present term
that the lien given by this statute does not extend to a rail-
road bridge, because we thought it not within the language
or intention. *La Crosse and Milwaukee Railroad Co. vs
Vanderpool, supra,* 119. But where a railroad company
does come within both, we feel that we have no authority,
and certainly have no disposition to exempt them from its
provisions.

The case of *Dunn vs. The North Missouri Railroad,* 24
Mo., 493, is not applicable to the policy of this state. The
court there place express reliance upon the fact that their
constitution required the state " to forever encourage internal
improvements," and that the state had, accordingly, " assum-
ed immense responsibilities," in building that and other
roads. But our constitution expressly forbids the state to
be any party to carrying on such improvements, but leaves
them to private enterprise, with such aid as may be obtain-
ed from the localities through which they pass.

But there are several very recent and well reasoned cases
which, we think, take a sounder view of this question of
public policy, and some of which reject the doctrine that
creditors of these corporations are not entitled to the ordinary
remedies to collect their debts.

In the case of *Platt vs. The New York and Boston Rail-*

*road Co.,* 26 Conn., 544, proceedings were taken against the company under the insolvent act, and this same plea was set up, that although they might be within the letter of the act, they were not within the intent, and the public interest forbid that they should be subjected to those proceedings. But the court held them liable, and said : " The reasons urged for distinguishing between railroad companies and other private business corporations, do not strike us with any considerable force, while justice obviously requires that the creditors of that particular class of corporations, should have the same protection for their debts, as is furnished for the creditors of other similar corporations."

So also in the *Boston, Concord, and Montreal Railroad vs. Gilmore et al.,* 37, N. H., 410, an attachment of the locomotives and cars in daily use, was sustained by the court against this same argument, and they utterly reject the doctrine that the personal property of a railroad is not liable to the same remedies as the property of others. A portion of the remarks of the court are directly applicable to the question here. Having alluded to the fact that these corporations may mortgage their property, they proceed : " We are unable to see any principle of public policy or convenience, which should allow such corporations to mortgage their cars and engines, which would not be equally strong to allow a creditor of the corporation to secure a lien substantially of the same kind by an attachment. In either case the debt must be paid, or the creditor, by suitable proceedings may cause the property to be applied, by sale or otherwise, to the payment of the debt, and the inconvenience of the public, or to the corporation, is not materially greater in the one case than in the other." The same reasoning applies with greater force to the question of exempting a railroad corporation from the specific lien given by statute to the mechanic, who has erected a building.

In a recent case in Ohio, not yet reported, *The Columbus, Piqua & Ind. R. R. Co. vs. Geo. S. Coe*, a copy of the opinion in which has fallen under our observation, this whole subject is reviewed, and the doctrine that a railroad, with all its cars, engines, and other personal property, is an entire thing, and the latter not subject to levy and sale separately, is repudiated. They say that the property of a railroad company consists of its franchises, its real estate, and its personal property, and that the latter, consisting of cars, &c., is no more a part of the road than farming implements are a part of the farm, or furniture a part of the house; a proposition so obvious, that it seems strange that a different doctrine could ever have received any sanction. The court very justly says, that the interest of the owners is a sufficient security, that the road will be constructed and operated, if it could be done profitably, and if not, there is no power on the part of the state to compel it to be done. And on this question of policy they remark: " We are satisfied that it is not the policy of the state, nor just to individuals, that the power of a court should be invoked to enable an insolvent corporation to operate a railroad by protecting its property from the claims of creditors; of those who have performed for it labor, or have suffered losses or sustained injuries by the misconduct of its agents. We think that the true policy of the state requires that just demands should be met, and that the property of those against whom they exist, should be applied for that purpose." These views commend themselves to our judgment. We think, although railroads, like many other improvements, are of great public interest and importance, yet that sound policy does not require them to be built any faster than can be done consistently with justice and the preservation of private rights. And we are satisfied that the doctrine in question, together with another which has been held in some cases, that where a railroad is mortgaged with its franchises, that such

mortgage would attach to all subsequent property acquired by the company, tends to great hardship and injustice towards the smaller creditors of these corporations. It leaves them substantially without any remedy, by leaving one only which is too unwieldly for them to use. And their labor and property are absorbed for the benefit of those whose capital and operations were extensive enough to enable them to obtain the mortgage securities. We are not inclined to adopt a doctrine which leads to such inequality and injustice. And we hold that the appellants were entitled to the lien given by the statute. And as it appears from the affidavits on behalf of the company, that the building, as far as constructed, was designed for " stores and offices," it would be very extraordinary if they were not.

The next question is, as to the land to which the lien extended. The statute provides that in cities, it shall extend to the interest of the owner of the building in the lot on which it is situated, not exceeding in extent one acre. And we are satisfied that the word " lot" here used, had not reference to the lines of lots, as recorded upon city plats, but referred to the particular piece or parcel of land, used or designed for use in connection with the building erected. *Chateau et al. vs. Thompson*, 2 Ohio St. Rep., 123. So that if two or more city lots, less than an acre in all, should be in one enclosure, intended for use as one residence, the lien for a building, built on either, would extend to all. And on the other hand, if a single lot were divided into two or more, designed for separate use, a building on either division would only extend the lien to that division. Applying this doctrine here, it is obvious that if the whole building had been completed according to the contract, the lien would have extended to an acre in the block. And where, as here, the building was contracted for as an entire building, designed for some purposes to be used as such, though for others capable of and designed for divis-

ion and separate uses, we think if the mechanic builds any portion of it so as to be entitled to any lien whatever, and is prevented by the default of the other party from completing it, that such default cannot have the effect to limit and apportion the lien to such parts of the land as would be convenient for the use of the part actually erected, taken alone, but that it extends to all the land to which it would have extended, if the contract had been carried out. We hold therefore, that, as the whole block exceeded an acre, the appellants were entitled to a lien upon an acre in the block. And as it appears that the block was more than an acre, it became necessary to determine to what portion the lien extended. This question is not without its difficulties. And difficulties of even a more complicated character may arise in applying the provisions of the lien law to such cases. But in answer to an argument drawn from similar difficulties, in the case of *Platt vs. N. Y. & Boston R. R. Co.*, before cited, the court said they considered them insufficient to show that the legislature did not intend that the creditors should have the benefit of an application of the laws so far as they could be applied. We think the same principle applies here.

The difficulty arising here grows out of the fact that the track of the company runs across the eastern portion of the block, between the building and the river. In the case of a building occupying such a position with reference to the track at any other point, except at the very end of the road, there would be much more reason for saying that the land on which the track was laid, should not properly go with the building. But here, where the premises are at the very end of the road, and where, from the very nature of the premises, it would be more convenient to both parties if they are to be severed, to have access both to the river and the street, and there not being an acre west of the track, we have come to the conclusion, that the lien of the appellants was equivalent

Hill et al. vs. La Crosse and M. R. R. Co.

to a mortgage by the company of an acre in the block, and that it should be adjudged to cover the south one acre of the block, extending from the river to the street, and that it should be so sold as to leave what remained to the company in a compact form, extending also from the river to the street.

We think also, the court erred in reducing the appellants' judgment by the amount of the Carney judgment. The appellant's judgment was recovered first. And if there is any incompatibility between the existence of the two judgments, the company, after the first was recovered, should have set it up in the other suit, by leave of the court, if necessary, to prevent another recovery. But no such incompatibility exists. It is frequently the case that several judgments are recovered for the same debt. It is true, there can be but one satisfaction. But the recovery of a judgment is not a satisfaction. And in this case, notwithstanding Carney's judgment, he might have sued the appellants for the same debt, and have collected it out of their property. If he had done so, then their only remedy would have been to make another application and have their judgment modified back to its original amount. We do not understand this to be the proper method of adjusting such matters. But that the several judgments remain, and the court by the proper order or judgment provides for the application of the proceeds so as to protect the rights of all the parties.

The order or modification of the judgment appealed from is reversed, with costs, and the cause remanded with directions to modify the judgment in accordance with this opinion.

NOTE.—Since writing the above opinion my attention has been called to section 34, chap. 79, R. S., 1858, making the rolling stock of railroads fixtures. That, of course, would render the reasoning of the opinion inapplicable to any question arising in regard to the rolling stock, but does not impair its force considered independently of statutory provisions.—PAINE, J.