[L. A. No. 264.   Department One.—February 12, 1898.]

## PACIFIC ROLLING MILL COMPANY, Respondent, v. BEAR VALLEY IRRIGATION COMPANY et al., Defendants. J. A. GRAVES et al., Intervenors, Appellants.

Liens for Materials—Construction of Canal—Separate Contracts for Divisions—Connection of Completed Part of Canal with Pipe Line —Suspension of Work—Extent of Claim of Lien.—Where an irrigation company, owning a reservoir and pipe line, entered upon the construction of a lengthy canal, consisting of four divisions, to be constructed under separate contracts for each division, the plan of which did not include the pipe line as any part of the canal, but was to follow its route, and, after two divisions of the canal were completed, under separate contracts for the construction of each, they were temporarily connected with the pipe line for immediate use, whereupon work ceased upon the other proposed divisions, and the property passed into the hands of receivers, claimants of liens for materials furnished for the construction of the two completed divisions, may file liens thereupon, without including any other incomplete divisions of the proposed canal, or the pipe line, as being a necessary part of the structure for which the materials were furnished.

Id.—Refusal to Allow Amendment of Answer—Harmless Ruling—Admission of Evidence.—The refusal of the court at the trial to permit an amendment to the answer, setting up the existence of an entire system of which the completed divisions of the canal formed a part, as presenting a new issue, upon which no evidence had been offered, is harmless, where the court subsequently allowed evidence upon that issue, which was considered in that court, and upon appeal.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. John L. Campbell, Judge.

The facts are stated in the opinion.

William J. Hunsaker, for Appellants.

Sheldon Borden, and Wilson & Bulla, for Respondent.

CHIPMAN, C.—The defendant, Bear Valley Irrigation Company, was incorporated under the laws of this state for the purpose of engaging in very many kinds of business. Among other of its undertakings was that of constructing a canal or aqueduct,

called "Santa Ana canal," from a point on the Santa Ana river, known as the company's head works, through what is called Blair's Pass, to the Alessandro & Perris Irrigation districts, in Riverside county. The entire proposed line of canal comprised what are termed in the transcript divisions 1, 2, 3, and 4. The work of construction began about December, 1892; divisions 1 and 2 were completed September 16, 1893, when construction work ceased; division 3 was partly graded; division 4 was only surveyed. The route of the canal was down the Santa Ana river for about three miles, where it left that stream and crossed the dividing water shed to Mill creek, where at the head of what is called the Alessandro pipe line of the company, previously constructed and in operation, divisions 1 and 2 ended. Division 3 was to follow substantially the route already taken by the Alessandro pipe line to Blair's Pass. Below this point the line was called division 4. Plaintiff and plaintiff's assignors furnished materials used in the construction of divisions 1 and 2. This action was brought to foreclose plaintiff's liens. The complaint and liens were so drawn as to claim a lien on divisions 1, 2, and 3, or on 1 and 2, as the facts might warrant, but did not include the Alessandro pipe line or other of the company's works. Plaintiff had judgment foreclosing its liens on divisions 1 and 2. After the action was brought, J. A. Graves and A. P. Maginnis, who had been appointed receivers of defendant company by order of the United States circuit court, and to whom, as such receivers, the defendant company had transferred all its property, answered the complaint and now prosecute this appeal, by bill of exceptions, from the judgment and from the order denying motion for new trial.

1. Appellants challenge the sufficiency of the evidence to justify findings 5, 10, 13, and 15, which are to the effect, briefly stated, that divisions 1 and 2 of the "Santa Ana Canal" form a complete structure within the meaning of section 1183 of the Code of Civil Procedure, and do not and never did form a part of an entire and continuous line or system of canals, and that the said canal does not extend beyond the head of the Alessandro pipe line.

As I understand the position of appellants, it is that the lien

should have been claimed upon the entire system of defendant company, or should at least have included division 3 and the Alessandro pipe line: that "the word 'structure,' as used in section 1183 of the statute, means an entire thing; that the statute makes no distinction between buildings, railroads, ditches, flumes, aqueducts, mining claims, or other structures; therefore, a ditch or flume which forms a part of a continuous line of canal, owned and operated by one person or company, is as much an entirety as a railroad, and the law with reference to mechanics' liens on railroads is clearly applicable to such cases." *Cox v. Western Pac. R. R. Co.*, 44 Cal. 28, where a lien was filed on a portion of a railroad, and *Williams v. Mountaineer etc. Co.*, 102 Cal. 134, where the lien was claimed on a portion of the property comprising a mill, tramway, boarding-house, and other buildings, belonging to a mining claim, are relied upon by appellants. Appellants also cite *Brooks v. B. & S. Railway Co.*, 101 U. S. 443; *Farmer's etc. Co. v. Candler*, 87 Ga. 241; *National etc. Works v. Oconto etc. Co.*, 52 Fed. Rep. 43; affirmed, 59 Fed. Rep. 19; *Midland Ry. Co. v. Wilcox*, 122 Ind. 84; *Helm v. Chapman*, 66 Cal. 291; *Willamette etc. Co. v. Kremer*, 94 Cal. 205; *Wright v. Cowie*, 5 Wash. 341; *Knapp v. St. Louis etc. Ry. Co.*, 74 Mo. 374. No intelligent application of the cases cited can be made without a clear understanding of the facts. William Ham Hall testified: "I planned the Santa Ana canal; the objective point of that canal was the Alessandro tunnel, which is from twelve to twenty miles from the head of the Alessandro pipe line, depending on the route which might be followed. Divisions 1 and 2 were planned so as to go to Mill creek, near the head of the pipe line. Division 3 ran thence to Blair's Pass, almost parallel to the pipe line." Again he testified: "It was realized from the beginning that water would have to be turned into that pipe as a temporary expedient; the canal was not regarded as a mere feeder to the pipe, but the canal was projected to be built through to the tunnel. If the canal had been constructed through to the tunnel the pipe line had no utility." Again: "The intention was to take up the Alessandro pipe line from its head to Blair's Pass, seeing that it ran parallel to the canal for that length and would be of no use; . . . . or perhaps use a small piece of it in the neighborhood of Blair's Pass by con-

necting with the canal there." On cross-examination, he was asked: "Q. Wasn't it the intention from the beginning that when the Santa Ana canal was constructed to the Alessandro pipe line to connect the two together? A. No, sir, it was not. From the beginning it was not intended to put the Santa Ana canal there at all." It appeared that the canal had a capacity of six thousand miner's inches, while the pipe could carry only nine hundred to one thousand miner's inches. A witness for appellants testified that this pipe line was finished about May or June, 1891, and took water from Mill creek from that time until September, 1893. Appellants introduced certain proceedings of defendant company in relation to acquiring temporarily, from certain persons, the right to take water from Mill creek to run in this pipe, but there is nothing in this evidence inconsistent with the testimony of Mr. Hall that the pipe line was used only as "a temporary expedient," and in fact formed no part of the system of which the Santa Ana canal was, what this witness termed, "the main artery."

The defendant company owned what is known as Bear Valley reservoir for the storage of water, several miles above the "head works." Bear creek empties into Santa Ana river about four miles above the head of the canal. Water is taken directly from Santa Ana river into the canal, and at some seasons of the year part of the water comes from this storage reservoir. The company also takes water from Santa Ana river for ditches and flumes other than and wholly independent of the canal.

Division 3 was never completed. Mr. Hall testified: "It has never been a completed canal. It has never been in condition to be used as a canal. It has never been graded for its entire length. The reason why it was not graded was that the company did not have the right of way; at places there are flumes yet to be built; from half a dozen to eight pieces of flume to be built, aggregating between three and four thousand feet. There were tunnels yet to be constructed—at least six—I don't remember the exact number." On cross-examination he said: "One place that I know of my own knowledge where the company did not have a right of way was through a tract owned by a man named McIntosh, and the distance was nearly three-quarters

of a mile by the located line. . . . . I know, up to within thirty days before work was stopped, they did not have a right of way in several places that I could designate." It appeared that the company let the work by separate contracts on each of the divisions, and it was not done under an entire contract for the whole work. Keeping the facts before our minds, there is not much to be said as to the law which has not already been settled. *Williams v. Mountaineer etc. Co., supra,* very clearly points out a distinction between the lien upon a "mining claim" and the lien upon "other structures," as mentioned in the act. In the case of *Cox v. Western Pac. R. R. Co., supra,* the contract let to McLaughlin was an entire contract for the whole work of grading the roadbed, constructing all superstructures, buildings, etc., to place the road in complete working order to receive the rails from San José to Stockton. McLaughlin sublet a portion of the work for the whole distance to Cox & Co., upon an entire contract to be paid for as sections of twenty miles were completed. Upon McLaughlin's failure to pay upon the completion of the first section, Cox & Co. filed a lien upon that part of the road. It was held that neither the contractor nor a subcontractor can, from time to time as the work progresses, file successive liens, and that but one lien can be acquired, and it must be filed within the time specified in the statute after the completion of the work and upon the completed road.

Importance is attached to the fact that the contracts were entire for the whole work and plaintiffs had not fully performed; and, besides, there was nothing to show an abandonment of or interruption in the work; the complaint failed to allege that performance had been prevented by McLaughlin or either of the defendants, or that the contract had been rescinded. Here, then, the structure contemplated was a completed roadbed ready for the rails, extending from San Jose to Stockton. Under the facts shown, the lien could not attach to a portion of the road, and the court said: "It would render the statute absurd to hold that one contractor or subcontractor could acquire a lien upon a bridge, another upon a tunnel, and a third upon a culvert, all of which constitute portions of a railroad." The contention of appellants would require a lien for erecting a depot building to

replace one destroyed by fire, or a bridge washed away by flood and belonging to a company operating a railroad already completed and in operation, to claim a lien upon the entire system, however extensive, of which the depot or bridge formed a part. But we do not think this is the correct meaning of the statute. (*Hill v. La Crosse etc. R. R. Co.*, 11 Wis. 214, where a lien was upheld upon a railroad depot building and the lot on which it stood; *Purtell v. Chicago etc. Bolt Co.*, 74 Wis. 132, where a lien upon a railroad bridge was held good.) So far as any principle found in *Midland Ry. Co. v. Wilcox, supra,* may have any analogy to the principle involved here, that case seems to me unfavorable to appellants' contention. The railway company owned the line from Anderson to Lebanon, only a portion of which (Anderson to Noblesville) was completed and in operation; from Noblesville to Lebanon it was incomplete and was under construction. For the work on this latter section the lien was filed, and on this section alone. The lien was sustained on the uncompleted portion of the road. Of the cases dealing with waterworks, gasworks and the like, that of *National etc. Works v. Oconto Water Co., supra,* is a fair illustration. The lien claimant had furnished the pipe for the water system of the city of Oconto, which had been laid in the streets and connected with the pumping works and well of defendant. This and like cases are examples of continuous and contemporaneous works, and are also examples where, of the works comprising the "structure," each is useless without the other, or where they are so interdependent and intimately related that they must be regarded as an entirety.

Here, however, the Bear Valley reservoir had been in use long before the Santa Ana canal was projected, and so also had the Alessandro pipe line. The division 3 of the projected canal was graded in disconnected parts, but there remained yet to be obtained rights of way without which completion was impossible, and finally work on this division was abandoned and the whole property passed into the hands of receivers, and no work has been done on this division since September, 1893, so far as we know. We find no case among those cited by appellants parallel in its facts with the case before us, and no principle upon which their view of the matter can be upheld.

Respondent relies upon *South Fork Canal Co. v. Gordon*, 6 Wall. 561, as conclusive against appellants' contention that the lien should extend over the Alessandro pipe line. Just why appellants should insist that respondents are entitled to no lien at all because they have asked it on too little of appellants' property might challenge inquiry. But aside from this we think the facts here bring the case within the principles discussed and decided in the case last cited. From a reservoir near Placerville a canal or flume extended to the south fork of the American river—about twenty-five miles. When the contract with Gordon was entered into, the flume was completed from the reservoir to Long canyon —eleven and two-thirds miles. Water flowing through it was used by means of several outlets for mining purposes. It was fed from sources other than the south fork. Gordon's contract was for the extension of this canal. The work commenced where the existing work ended and reached to the south fork of the American river, the object being to make use of that river as a feeder and to increase the water supply. They were distinct works as having been completed at different times and by different contractors, and the upper section had already been in use. The points of identity were continuity and a common object, use, and ownership. The court below held that Gordon had a lien on the entire length of the canal. On appeal, the supreme court reversed the decree, holding that the lien extended only to that portion of the canal constructed by him. The Alessandro pipe line was already in use and was fed by water from Mill creek; it was no part of the plan to supply this pipe from the canal—on the contrary, the plan was to abandon the pipe line. Besides, it was totally inadequate to carry the water of the canal, and would have been useless when the canal was completed unless used to carry the water of Mill creek, in which case it would have been distinct from the canal.

Respondents claim that the wisdom of the decision of *South Fork Canal Co. v. Gordon, supra,* has been questioned and was practically disapproved in *Brooks v. Railway Co., supra.* The opinion in this latter case was written by Mr. Justice Miller (one of the dissenting Justices in the former case), but I am unable to discover that any doubt whatever is cast upon the earlier case.

It is distinguished so clearly as that any criticism of it would have been gratuitous. Respondent cites the case of *Creer v. Cache Valley Canal Co.* (Idaho, Dec. 17, 1894), 38 Pac. Rep. 653. This case goes further in support of the judgment and order here than we think necessary.

We cannot perceive upon what principle the lien should be made compulsory as to division 3, or why it should be lost entirely because not claimed on the pipe line. Division 3 is not only incomplete, but there remain rights of way to be obtained without which the surveyed line and the work done have no value or utility. No one can say that it ever will be completed, and if so completed it yet remains to complete division 4 to make division 3 of value. The pleadings and liens would justify our holding that this division might be included, but we see no reason for compelling plaintiff to so extend its claim; nor do we see any legal ground upon which to do so.

2. Appellants allege error in the refusal of the court to allow their proposed amendment to their answer. It was objected to at the time it was offered because the material amendment related to matters about which there was up to that stage of the trial no evidence, and because it presented a new issue; it was as to the existence of an entire system of which the canal formed a part. But the court subsequently let in all the evidence of appellants on that issue, and it has had consideration here; we cannot, therefore, see that they were injured by the ruling.

We are unable to discover any error in the judgment or order, and therefore advise that they be affirmed.

Haynes, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Harrison, J., Garoutte, J., Van Fleet, J.