KOSIDOWSKI, Administratrix, Respondent, vs. CITY OF MIL-
WAUKEE, Appellant.

*November 2, 1912—February 18, 1913.*

*Master and servant: Injury from defective derrick: Statutes: Con-
struction: "Erecting:" "Altering:" "Structure:" Ejusdem gen-
eris.*

1. Where a derrick furnished by the employer and used in the lay-
   ing of water mains to lower the sections of pipe into place
   went to pieces because of some unexplained infirmity and in-
   jured an employee assisting in such operation, the case was
   within sec. 1636—81, Stats. (Supp. 1906: Laws of 1901, ch. 257).
2. The laying of the water main was "erecting" a "structure" and,
   such main being an addition to one already existing, was also
   "altering," within the meaning of the statute.
3. A "structure," within the meaning of the statute, may be below
   the surface of the ground as well as above.  It is any artificial
   creation.
4. The derrick so used was one of the instrumentalities named in
   the statute, *i. e.* "scaffolding, hoists, stays, ladders or other
   mechanical contrivances" furnished or erected for the perform-
   ance of the labor.
5. Each phrase in said sec. 1636—81, Stats., relating (1) to the
   labor, (2) to the subject of the labor, (3) to the instrumentali-
   ties used, is to have a broad, liberal construction and to be
   given meaning to the extent of the reasonable scope of its
   descriptive words.
6. The rule of *ejusdem generis* is not applicable, and the word
   "structure," particularly, is not to be limited by reference to
   the word "building."

APPEAL from a judgment of the circuit court for Milwau-
kee county: WARREN D. TARRANT, Circuit Judge.  *Affirmed.*

Action to recover for the death of plaintiff's intestate.

There was evidence to this effect: May 27, 1909, the in-
testate, a married man, while working for defendant at $1.75
per day laying water mains, using a derrick to lower the sec-
tions into place, was so injured by a going to pieces of the

appliance and fall of the parts that he died, August 23, 1909. He suffered between the time of accident and death. The action was twofold: 1st, for damages caused to surviving relatives; 2d, for damages to the intestate. All facts requisite to legal capacity to sue and commencement of the action, existed. The precise cause of the disintegration of the derrick is unknown. It was firmly placed in position to do the work. It was repaired a short time theretofore and was free from any infirmity, so far as known or apparent from ordinary observation. Each time a section of pipe was lowered the derrick was, necessarily, moved and secured in a new position for the next section. That had been done several times on the particular day. The deceased assisted in such operations. The derrick, prior to the accident, appeared to be amply strong for the work. However, from some unexplained infirmity, it went to pieces while deceased and his associates were working with it and caused his death.

The trial court held that sec. 1636—81, Stats. (Supp. 1906: Laws of 1901, ch. 257), applied and that, there being no evidence of contributory negligence or assumption of the risk, defendant was liable as a matter of law; leaving no jury question except as to the amount of recoverable damages. Two questions were submitted in respect thereto,—one as to each cause of action,—resulting in a finding of $4,845.66 on the first claim and $441.66 on the second. Plaintiff was ordered to remit from the first amount $1,000 as a condition of judgment. The terms were accepted.

For the appellant there was a brief by *Daniel W. Hoan,* city attorney, and *W. H. Timlin, Jr.,* first assistant city attorney, and oral argument by *Mr. Timlin.*

For the respondent there was a brief by *W. B. Rubin,* attorney, and *Horace B. Walmsley,* of counsel, and oral argument by *Mr. Max Schoetz, Jr.,* and *Mr. Walmsley.*

The following opinion was filed December 10, 1912:

MARSHALL, J.  The dominant question on this appeal is whether a case was made within sec. 1636—81, Stats. (Supp. 1906: Laws of 1901, ch. 257).  That is ruled in respondent's favor by the reasoning and result in *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 139 N. W. 179.  The legislative purpose of the statute is there definitely declared.  There is no need of going over the ground again.  By the broad meaning of the section, as intended by the lawmakers, and determined in the highest court of the state where the enactment originated, *Caddy v. Interborough R. T. Co.* 195 N. Y. 415, 88 N. E. 747, the facts of this case are covered.

Looking at the language in the comprehensive sense in which it was doubtless used, the work, the appliance, and the creation the work was being expended upon are readily seen to be within its scope, though, 'tis true, if it were necessary to carry out the intent of the lawmakers, such language could be viewed so restrictively as to exclude the particular circumstances here.

The written law in question covers three phrases: 1st, the labor,—"any kind in the erection, repairing, altering or painting;" 2d, the subject of the work,—"a house, building or structure;" 3d, the instrumentality used,—"scaffolding, hoists, stays, ladders or other mechanical contrivances."  The "person employing or directing another to perform" any of such labor is required not to "furnish or erect, or cause to be furnished or erected for the performance of such labor" any of the instrumentalities which shall be "unsafe, unsuitable or improper" and "not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

That the derrick was within the prohibited instrumentalities does not admit of a question.  It was characterized by

some very serious infirmity else it would not have fallen in a complete wreck, as was the case. The setting up of the new water main was erecting within the broad sense of the term. Such term includes any work of creating a particular thing out of parts. The call for "altering" also satisfies the case. An addition to an existing water main is "altering" and quite plainly so. The thing worked upon, to wit, the water-works system, was a "structure." A structure may be below the surface of the ground as well as above. It may be erected or altered in one place as well as in another. Any artificial creation is a structure,—such as a canal, *Pacific R. M. Co. v. Bear Valley Irr. Co.* 120 Cal. 94, 52 Pac. 136; a fence, *Karasek v. Peier,* 22 Wash. 419, 61 Pac. 33; a mine, *Helm v. Chapman,* 66 Cal. 291, 5 Pac. 352.

By the process of reasoning leading to the conclusion in the former case it seems quite clear that the legislative language in question was intended to include all such work and appliances as are involved in this case, and that the reasonable scope thereof goes that far. Any resort to subsidiary rules for construction to restrict the meaning would result in defeating the will of the lawmaking power instead of giving full effect thereto. The latter is a judicial duty and should be, as it is, judicial pleasure.

The mere change of viewpoint, as indicated in the former case, necessary because of a change of conditions in order to obtain an accurate view of the legislative will, eliminates any reason for indulging in the rule of *ejusdem generis* and other rules which have in times past been the pathway for discovering the intent of written law, and turns to the broad liberal construction which accords meaning to each phrase of the enactment to the extent of the reasonable scope of its descriptive words. Each in the series, used disjunctively, stands independently of any other, the whole encompassing the broad field which the legislature manifestly intended to reach.

The New York court in *Caddy v. Interborough R. T. Co.,* *supra,* spoke very emphatically on the subject here briefly discussed, using this language, particularly as regards the word "structure:"

"We incline to the view that the rule of *ejusdem generis* does not apply" to restrict the word "structure" by reference to the word "building." "The word 'structure' in its broadest sense includes any production or piece of work artificially built up or composed of parts joined together in some definite manner. . . . In cases like this, lexicographers' definitions are useful as guide posts, but they do not take us to our destination. The statutory meaning of a word or phrase must be gathered from the purpose for which the law containing it was enacted." The "evil sought to be remedied by a statute designed to charge the master with a more rigid and personal responsibility" gives direction to the judicial mind in determining the intent and extent of the effort.

Such is the letter and spirit of the. judicial reasoning in the home of the legislation under consideration.

Nothing further need be said respecting the important matter presented. Most other matters are eliminated by the result of the major question. The rest have received due consideration without discovering any prejudicial error, so it seems best to conclude without treating them in detail.

The case should not be confused with such a situation as was dealt with in *Hutton v. Holdrook, C. & D. C. Co.* 139 Fed. 734,—one where safe material was furnished for an erection and the work of producing the appliance was left to the servants who were required, as they proceeded, from time to time, to take down and re-erect. Here the appliance was the derrick. It was furnished as used. It was inherently unsafe. That is evident. The fault was not in the mere placing of it to handle the particular piece of pipe, but in the thing itself. The fact, if it be a fact, that by ordinary rules appellant was free from want of ordinary care in respect to the character of the derrick, is immaterial. By force of the

statute, the master was responsible for the infirmity which caused the instrumentality to fall to pieces. Such was the purpose of the statute. The legislature had a right to place that burden on the employer if it saw fit. Having done so, it is not within the competency of the court to afford relief by judicially lifting such burden. The responsibility is with the lawmaking power and the appeal must be made in that forum.

*By the Court.*—The judgment is affirmed.

TIMLIN, J., took no part.

A motion for a rehearing was denied, with $25 costs, on February 18, 1913.