LANG, Appellant, vs. FINDORFF and another, Respondents.

*December 13, 1924—January 13, 1925.*

*Master and servant: Safe place to work: Employees of subcon-*
*tractor: Liability of general contractor: Collapse of elevator*
*hoist: Presumption: Question for jury.*

1. Defendants, engaged as general contractors in the erection of
   a building, let a contract to a stone and marble company for
   doing the interior marble work, and pursuant to such con-
   tract furnished an elevator hoist extending from the ground
   to the top of the building. *Held,* that under secs. 101.01,
   101.06, and 101.07, Stats., the defendants were "employers,"
   and should have furnished plaintiff, who was employed by
   the marble company, a safe place of employment; and the
   evidence, which disclosed that plaintiff, who sustained injury
   when the hoist collapsed, was permitted by defendants' en-
   gineer to ride the hoist, that he did not know there was any
   objection to his so doing, and that one of the defendants
   knew that men were riding thereon and permitted the same,
   is sufficient to take the question to the jury as to whether
   plaintiff was properly riding the hoist when the accident
   happened.   p. 549.
2. The court will take judicial notice that an elevator hoist may
   be reasonably built, maintained, and operated so that it will
   be entirely safe against danger of collapse; and a presumption
   of negligence follows from the fact that the cage of the
   hoist collapsed and the bottom fell out while it was being
   operated.   p. 549.
3. The evidence as to a lack of inspection and as to the small cost
   of keeping the hoist in repair is *held* sufficient to take the
   case to the jury on this point of negligence.   p. 550.

APPEAL from a judgment of the superior court of Dane
county: AUGUST C. HOPPMANN, Judge. *Reversed.*

This action was brought for damages on account of per-
sonal injuries to the plaintiff. At the conclusion of the
plaintiff's evidence the court directed a nonsuit, and judg-
ment was entered accordingly.

The plaintiff appeals and assigns as errors the action of
the court in nonsuiting the plaintiff and in excluding certain
evidence offered by the plaintiff.

For the appellant there was a brief by *Glicksman, Gold & Corrigan,* attorneys, and *Ray T. McCann,* of counsel, all of Milwaukee, and oral argument by *Mr. McCann.*

For the respondents there was a brief by *Gilbert, Ela, Heilman & Raeder* of Madison, and oral argument by *C. W. Raeder.*

CROWNHART, J.    The defendants were partners engaged as general contractors in the erection of the Beaver Building in the city of Madison. They let a contract to the Andres Stone & Marble Company for doing the marble work required on the inside of the building. The contract between the defendants and the Andres Stone & Marble Company was in writing and contained the following provision:

"2. The use of hoisting facilities, including labor and power for the operation of same, gangways, the necessary water, heat, light, and storage space in the building, to be provided by the owner or general contractor without expense to the marble contractor."

Defendants, under such provision of the contract, furnished to the Andres Stone & Marble Company an elevator hoist on the outside of the building, which consisted of the framework or wooden tower extending from the ground to the top of the building, built on a standard plan. Inside of the framework was the cage, on which the materials were loaded and hoisted by means of a cable operated by an engine thirty-seven feet distant from the foot of the tower. The engine was in charge of the defendants' employee, named Murray. On the morning of March 21st the plaintiff was ordered by his foreman to load marble on the hoist with a man named Kelley, and to have the same hoisted to the various floors of the building, from which said marble was to be unloaded. At each floor of the building a platform was erected from the building to the hoist, upon which the material was to be unloaded and taken into the building.

During the forenoon these two workmen made ten or twelve trips hoisting marble, and on these trips the two workmen rode the hoist.   After dinner they made another trip, the hoist being loaded with marble for the third and fifth floors. The hoist was first carried to the fifth floor, where half of the marble was unloaded, and then it was lowered toward the third floor, but on the way down the cage collapsed, the bottom falling out, and plaintiff was thrown to the ground, causing him serious injuries.   The hoist had been intermittently used during the fall and winter, up to the time of the accident, by the Andres Stone & Marble Company, and in each case the men engaged in delivering the marble rode the hoist up and down.   When the men so engaged first used the hoist, the foreman was told by Murray that the men should not ride the hoist, and that the defendants did not permit employees to ride it.   However, the foreman insisted on the men riding the hoist, and Murray made no further objections, except to say that if they did so it would be at their own risk, and the employees of the Marble Company continued to ride the hoist, to the knowledge of Murray, whenever it was used by them.   The plaintiff had not worked around the hoist before the day of the accident, and had no knowledge that the defendants objected to the men riding the hoist.   Before the accident there had been a change of foremen, and the foreman in charge at the time of the accident had received no instructions from the defendants or Murray not to allow his men to ride the hoist. There was credible evidence that it was customary in Madison for men to ride hoists under similar circumstances, and it appeared that it was necessary for the men to be on the hoist when they were unloading the marble.   It further appeared that the defendant *Milton Findorff* was engaged in supervising the construction of the building, and was there three or four times a day looking after his duties in that respect, during all the time the Marble Company was using the hoist, and that he was present at times when the men

were riding the hoist and when there was nothing to prevent
him from seeing the men riding it.

Sec. 101.06, Stats., formerly sec. 2394—48, provides
that—

"Every employer shall furnish employment which shall
be safe for the employees therein and shall furnish a place
of employment which shall be safe for employees therein and
for frequenters thereof and shall furnish and use safety de-
vices and safeguards, and shall adopt and use methods and
processes reasonably adequate to render such employment
and places of employment safe, and shall do every other
thing reasonably necessary to protect the life, health, safety,
and welfare of such employees and frequenters."

The defendants were employers and the plaintiff was an
employee, and was working in a place of employment which
includes "every place, whether indoors or out or under-
ground and the premises appurtenant thereto where either
temporarily or permanently any industry, trade or business
is carried on." Sub. (1), sec. 101.01. The statutes define
an employer to "include every person, firm, corporation,
agent, manager, representative or other person having con-
trol or custody of any employment, place of employment or
of any employee," and employee is defined to "include every
person who may be required or directed by any employer, in
consideration of direct or indirect gain or profit, to engage
in any employment, or to go or work or be at any time in
any place of employment." Sub. (3) and (4), sec. 101.01,
Stats. The statute further provides that "No employer shall
require, permit or suffer any employee to go or be in any
employment or place of employment which is not safe."
Sec. 101.07. As we have seen, the engineer of the hoist,
Murray, who was in charge thereof and operated the same,
permitted the plaintiff, *Lang,* to ride upon the hoist without
any protest, and that *Lang* had no knowledge whatever of
any objection to his riding thereon. It further appears that
one of the defendants was frequently in and about said

building while such hoisting was going on, during several months, from which the jury might well have found that he personally knew that men were riding the hoist, and that he permitted the same. We must hold, therefore, that there was sufficient evidence to take the question to the jury as to whether *Lang* was properly riding the hoist at the time of the accident.

The statute is mandatory that the defendant should have furnished a safe place of employment, and "safe," as defined in the statutes, means "such freedom from danger to the life, health, safety or welfare of employees or frequenters . . . as the nature of the employment, place of employment, . . . will reasonably permit." Sub. (11), sec. 101.01.

The fact that the hoist collapsed raises a presumption that it was not safe. We must take judicial knowledge that a hoist may be reasonably built, maintained, and operated so that it will be entirely safe against the danger of collapse. A presumption of negligence follows from the fact that the hoist did collapse under the circumstances.

As was said in *Carroll v. C., B. & N. R. Co.* 99 Wis. 399, 403, 75 N. W. 176:

"When the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." Also see *Klitzke v. Webb,* 120 Wis. 254, 257, 97 N. W. 901, and *Parker v. Fairbanks-Morse Mfg. Co.* 130 Wis. 525, 110 N. W. 409, to the same effect.

And as was said in *Kosidowski v. Milwaukee,* 152 Wis. 223, 225, 139 N. W. 187:

"That the derrick was within the prohibited instrumentalities does not admit of a question. It was characterized by some very serious infirmity else it would not have fallen in a complete wreck, as was the case."

Further, there was the evidence of a civil engineer that the cage might reasonably have been made safe at a small expenditure, and also there was testimony that, although the hoist had been used for a long time and been exposed to the weather, it had not been inspected during such time. We must hold that the evidence was sufficient on this point to take the question to the jury. It follows that the court erred in granting a nonsuit.

*By the Court.*—The judgment of the superior court is reversed, and the cause remanded for further proceedings according to law.