## KARL DEINER v. CHARLES O. SUTERMEISTER et al., Appellants.

### Division Two, July 17, 1915.*

1. **PARTIES TO ACTION: Insanity After Suit Brought.** Even though the gist of the action is damages for insanity superinduced by negligent injuries, and the fact of insanity and the demand for damages therefor are brought into the case by an amended petition, plaintiff may maintain in his own name, without a guardian or next friend, a suit begun while he was sane.

2. **CONSTITUTIONALITY OF STATUTE: Not Timely Raised.** The Supreme Court on appeal will not consider the constitutionality of a statute upon which plaintiff has bottomed his case, where defendant did not raise the question of its invalidity until he had lost his case and came to file his motion for a new trial. Ordinarily a constitutional question must be lodged in a case as soon as is procedurally possible after the statute, order, judgment or thing alleged to be unconstitutional appears in the case.

3. **STRUCTURE: As Used in Statute: Does Not Include Hoist.** A hoist used in lifting stones to the top of a fire wall which is being, constructed, is not either a structure or a scaffold within the meaning of those words as used in the statute (Sec. 7843, R. S. 1909) declaring that "all scaffolds or structures used in or for the erection, repairing or taking down of any kind of building shall be well and safely supported, and of sufficient width, and so secured as to insure the safety of persons working thereon, or passing under or about the same, against the falling thereof, or the falling of such materials or articles as may be used, placed or deposited thereon;" and a demurrer should be sustained to a civil action for damages bottomed upon a violation of said statute, brought by a workman, who, while riding on a hoist carrying a stone, was injured when it suddenly broke and fell to the ground.

---

*Note.—Opinion filed July 6, 1915. Motion for rehearing overruled July 17, 1915. Certified to Reporter March 11, 1916.

4. ————: **Ejusdem Generis As Scaffold.** The "structure" used in said statute is *ejusdem generis* as "scaffold," and both words are to be construed as meaning scaffolds, or contrivances and appliances of similar use and nature to scaffolds, such as platforms, staging, trestles of whatever kind, and ladders supporting planks.

5. **TESTIMONY: Expert: Insanity: Cause.** Where the issue is whether plaintiff's insanity was congenital or was caused by a fall of the stone-carrying hoist on which he was riding, it is error to permit a medical expert, who did not see the fall nor examine plaintiff for nearly a year afterwards, to testify that "a blow of that character could have caused insanity." He cannot substitute his conclusions for the conclusions to be found by the jury. He cannot say that a conceded condition is the result of the proven injury, where the producing cause thereof is the whole issue.

Appeal from Jackson Circuit Court.—*Hon. Joseph A. Guthrie,* Judge.

REVERSED AND REMANDED.

*Pierre R. Porter* and *Cyrus Crane* for appellants.

(1) The court erred in overruling defendants' demurrer to the evidence and in refusing the request for a peremptory instruction at the close of all the evidence. The plaintiff failed to prove a violation of the statute. (a) A "hoist" is not a "scaffold or structure" within the contemplation of the statute. (b) The statute cannot be invoked against a master who did not construct or own or operate or control the hoist. Klebe v. Distillery, 207 Mo. 480. (c) A plaintiff who pleads specific negligence must prove it, and cannot rely on *res ipsa loquitur.* Cooper v. Realty Co., 224 Mo. 724; Gardener v. St. Ry. Co., 223 Mo. 419; Kirkpatrick v. Met. St. Ry. Co., 211 Mo. 85; Beave v. Transit Co., 212 Mo. 352; Feary v. Met. St. Ry. Co., 162 Mo. 96; Ely v. Railroad, 77 Mo. 36. (d) *Res ipsa loquitur* will not lie where it is as probable that the accident was due to a cause for which the master was not liable as to a cause for which he was liable. Cothron v. Packing Co., 98 Mo. App. 343; McGrath v. Transit Co., 197 Mo. 104; State ex rel. v. Shelton, 249 Mo.

697; Moriarty v. Co., 132 Mo. App. 653; Scott v. Nauss Co., 126 N. Y. Supp. 17. (d-1) The evidence failed to disclose whether the cause of the accident was due to negligent construction or operation, and for the latter Flanagan Brothers would be wholly responsible. (d-2) If the fall was due to negligent operation there would be no violation of the statute. (e) The section of the act under which this case was submitted to the jury is unconstitutional. Williams v. Railroad, 223 Mo. 666. (2) The court committed prejudicial error in permitting plaintiff's physician, Dr. Murphy, to state a conclusion which invaded the province of the jury. Taylor v. Railroad, 185 Mo. 257; Roscoe v. Railroad, 202 Mo. 594. (3) There is a defect of parties plaintiff. The court should not have permitted plaintiff to maintain the suit in his own name after the discovery of his insanity. A guardian should have been appointed by the probate court. 22 Cyc. 1222.

*Ernest A. Scholer* and *Gage, Ladd & Small* for respondent.

(1) The statute is a general law, and it was not necessary to specially mention it in the petition. It is sufficient if the facts alleged in the petition bring it within the statute, and we submit that they do. Lore v. Am. Mfg. Co., 160 Mo. 621; Strode v. Box Co., 250 Mo. 705; Lohmeyer v. Cordage Co., 214 Mo. 685. (2) This statute is highly remedial and is to be liberally construed. Koepp v. National Co., 151 Wis. 302; Kosidowski v. Milwaukee, 152 Wis. 233; Bohnhoff v. Fisher, 210 N. Y. 172; Johnson v. Railroad, 196 U. S. 17; Simpson v. Iron Works Co., 249 Mo. 376; Turner v. Land & Timber Co., 259 Mo. 15; Lore v. Am. Mfg. Co., 160 Mo. 608. (3) The rule of *ejusdem generis* does not apply, and the word "structure" must be construed as if it stood independently of the word "scaffold." Caddy v. Interborough R. T. Co., 195 N. Y. 415, 30 L. R. A. (N. S.) 30; Kosidowski v. Milwaukee,

152 Wis. 223; Koepp v. National Co., 151 Wis. 302. (4) The framework which supported the hoist, and even the hoist itself, were a structure within the meaning of this remedial statute. The board which broke and let the hoist fall was the top board of this framework on which rested the headpiece which supported the pulley, through which the hoist was operated. It was the breaking and falling of this board (which was part of this structure) which caused the injury to the plaintiff. (a) "Any artificial creation is a structure." Kosidowski v. Milwaukee, 152 Wis. 223. (b) "Any production or piece of work artificially put together in some definite manner is a structure." Fuvro v. State, 46 S. W. Tex. 932. (5) The duty of the master, created by the statute, is absolute and he is required to insure the safety of the structure used in the erection of a building against falling. The fact that the timber broke and fell shows that the structure was unsafe and insecure and the statute was violated. Stewart v. Ferguson, 164 N. Y. 553; Caddy v. Interborough R. T. Co., 195 N. Y. 415; Gombert v. McKay, 201 N. Y. 27; Smith v. Iron & Steel Co., 130 N. Y. Supp. 277; Bohnhoff v. Fisher, 210 N. Y. 172; Koepp v. National Co., 151 Wis. 302; Kosidowski v. Milwaukee, 152 Wis. 223; Railroad v. Enderle, 170 S. W. Tex. 276; Railway v. Kurtz, 147 S. W..658; Delk v. Railroad, 220 U. S. 580; Railroad v. United States, 220 U. S. 559; Railroad v. Taylor, 210 U. S. 281. The duties of master are absolute and violation of this statute constitutes negligence *per se*. Simpson v. Iron Works, 249 Mo. 376. (6) The many authorities cited by the appellant, to the effect that the doctrine of *res ipsa loquitur* does not apply in this case, are not in point. (7) Our statute prohibits the use of any such unsafe or insecure structure, whether it was constructed or owned by the defendants, or hired, or borrowed, or procured by them in any other manner from

others. Having hired the hoist from Flanagan Bros. and having hired Flanagan Bros.' engineer to operate it, they were, in all respects, as fully responsible as if they had constructed, owned and operated it themselves. This has been expressly decided. Bohnhoff v. Fisher, 210 N. Y. 172; Campbell v. McNulty, 148 N. Y. Supp. 73. (8) There was no error in admitting medical testimony for the plaintiff. The testimony objected to was at most but cumulative. Taylor v. Met. St. Ry. Co., 256 Mo. 210; Bragg v. Met. St. Ry. Co., 192 Mo. 334. (9) There is no defect of parties plaintiff. The plaintiff had a right to continue the suit in his own name, although he was insane. The suit was started while the plaintiff was sane, and he had never been adjudged insane. Allen v. Ranson, 44 Mo. 263; Koenig v. Depot Co., 194 Mo. 571.

FARIS, P. J.—Plaintiff sued defendants in the Jackson Circuit Court for personal injuries alleged to have been sustained by him while in defendants' employment and recovered judgment for $10,000. Defendants, after the usual motions, have appealed.

Defendants are partners engaged in business under the firm name of A. Sutermeister Stone Company, and were engaged at the time of the happening of the casualty on which this action is bottomed, in furnishing and putting in place the cut stone on a building in Kansas City, which was being constructed by Flanagan Brothers. Plaintiff, a young man about twenty-four years old, was in the employ of defendants as a common laborer, and at the immediate moment of the casualty was engaged in raising stone coping to the roof of said building by means of a hoist and in setting this stone in place upon the fire walls of the building. Two other men were employed in this work with plaintiff, namely, one Fischer, who seems to have been in charge of the work for defendants, and a negro by the name of Giles. The hoist which was

being used belonged to Flanagan Brothers, who had leased it temporarily to defendants, to be used by the latter in lifting the stone from the ground to the roof of said building. For the use of this hoist and the engine which operated it, and for the services of the engineer who ran the engine, defendants paid Flanagan Brothers one dollar per hour. This hoist consisted, it seems, of two rectangular shaped wooden platforms which ran up and down in a wooden framework and were raised and lowered by cables which ran over pulleys, which pulleys were operated by a steam engine, called in the vernacular of the trade a "hoisting engine."

After the work of hoisting this stone had proceeded for some several hours it became necessary to lift to the roof by means of this hoist an irregularly shaped stone, slightly shorter than the others and not long enough to lean against the cage so as to prevent it from falling. Thereupon Fischer, who as stated, was in charge of this work, asked in the presence of Giles and plaintiff, "Wouldn't it be wise for one of you fellows to go along with this stone?" At once, before Giles replied, plaintiff, without responding to the question except by his action, stepped upon the platform of the hoist and immediately thereafter the engine began to lift the hoist with plaintiff thereon. While the hoist was in motion and some considerable distance up, it suddenly broke and fell to the ground, carrying plaintiff with it. By this fall plaintiff received a severe laceration of the scalp and other injuries to his head, which some of the medical witnesses in the case diagnose as a fracture of the skull. He was taken up unconscious and removed to the emergency hospital, whence after temporary treatment he was sent to the city hospital, where he remained for a period of nine weeks, and was discharged, apparently cured. After his discharge from

the hospital he obtained light employment in one of the packing houses for some months, when he suddenly developed insanity, which necessitated his confinement in a sanitarium, where he yet was when the trial was had.

At a time left dark in the record, but as is conceded before plaintiff became insane, he filed this suit for damages against defendants. Subsequently, and after the suit had been pending for some time, an amended petition was filed herein, wherein plaintiff's insanity was set forth as one of the results of the injuries which he had suffered and for which damages were asked. In brief, this amended petition alleged that defendants had borrowed or rented the hoist from Flanagan Brothers and that one, said Fischer, defendants' foreman, had directed plaintiff to go upon the platform of the hoist and steady and support the stone which was being lifted by it, and that as said hoist was being lifted the timbers which supported it broke and the hoist and platform fell and hurt plaintiff. The specific negligence complained of in the petition was (a) an allegation of common-law negligence, for that defendants negligently required plaintiff to go upon a hoist which they knew, or which they might have known by the exercise of ordinary care, was defective in that the timbers therein were old and rotten and knotty and of insufficient size and not strong enough to sustain both the stone and plaintiff; (b) that the hoist which broke was a *structure* within the purview of section 7843, Revised Statutes 1909, and that it was not secured as said section supra, requires, so as to insure plaintiff against the falling thereof; and (c) that an ordinance of Kansas City requires elevators to be inspected and approved by the city elevator inspector and that this ordinance had been violated, in that no inspection of the hoist had ever been made.

Defendants moved to strike from the petition the allegations of statutory negligence and of violation of the ordinance, which motion was by the court overruled. Defendants thereupon filed an answer which consisted of (1) a general denial; (2) a plea of contributory negligence; (3) a plea that the injury alleged was caused by a fellow-servant, and (4) the defense of assumption of risk.

Upon the trial plaintiff abandoned his allegations of common-law negligence and violation of the ordinance, and elected to go to the jury solely upon the alleged violation of the statute supra.

The chief, if not the only controversy of fact in the case, was as to the cause of the insanity, from which appellants admit in their brief plaintiff was suffering. Much expert testimony was offered *pro* and *con*. It was strenuously contended by plaintiff's counsel that his insanity was due to a depression whereby the bony parts of the skull pressed upon the brain, which depression, it was claimed, was superinduced by the fracture of plaintiff's skull in his fall with the hoist. Toward the question of whether this depression, and therefore the insanity of plaintiff, was congenital or inflicted by the fall he concededly sustained, most of the testimony in the case was directed.

At the close both of plaintiff's case and of all the testimony in the case defendants offered demurrers to the evidence which were by the court overruled.

If other facts shall be necessary we shall add them in the opinion when we come to discuss the points mooted.

I. Passing over for the present the alleged unconstitutionality of section 7843, Revised Statutes 1909, for that it was not timely raised, we find three alleged errors lodged in the case: (a) that plaintiff may not maintain a suit

Insane Plaintiff.

in his own name without a guardian or next friend, though begun while he was sane, when the gist of the case is damages for insanity superinduced by the negligent infliction of the hurt alleged; (b) that the facts here do not bring the case within the purview of section 7843 supra; and (c) that it was error to allow the medical experts to express an opinion as to the causal connection between the injury and the insanity of plaintiff.

It is fundamental that an insane person under guardianship cannot sue (i. e., begin a suit) in his own name. Neither we opine should an insane person be allowed to bring an action, though not under guardianship, when as here, the very gravamen of the case is the assessment of damages for a condition of insanity which plaintiff not only concedes, but urges. In such case a demurrer would lie, we think. But these suggested conditions do not cover this case. Here the plaintiff is not under guardianship. When he brought this suit he was not insane. Pending the suit he became insane, and thereupon by an amended petition he set up in augmentation of damages the fact of insanity. When the suit was filed he was *sui juris*. This question has been ruled adversely to the contentions of defendant. [Allen v. Ranson, 44 Mo. 263; Koenig v. Union Depot Ry. Co., 194 Mo. l. c. 571.] It is true, as defendant urges, that in both the cases supra the fact of insanity was not the gist of the case, but merely incidental. In short, here the suit is for damages for injuries negligently inflicted, which it is alleged, brought about the insanity of plaintiff. But why should there be a distinction made? The guardianship of plaintiff would affect but two aspects of the case: (1) Matter of costs which is already covered and provided for by the order of the court permitting plaintiff to sue herein as a poor person, and (2) the disposal of the proceeds of the litigation, should there

266Mo.33

be any, in such wise as to protect both the insane plaintiff and the defendants. These conditions and none others are to be met here, and they were likewise present and confronting this court in the two cases cited supra. So, since the conditions which might vex are the same precisely, the applicatory principles should be similar and no reason can be observed for changing the ruling. We follow Koenig v. Union Depot Ry. Co., supra, and disallow this contention.

II. As above forecasted, we do not consider the suggested constitutional invalidity of section 7843, Revised Statutes 1909, formerly section 19 of "an Act relating to manufacturing, mechanical, mercantile and other establishments and places, and the employment, safety, health and work hours of employees" (Laws 1891, pp. 159 et seq.), for the reason that such unconstitutionality was not raised by defendants anywhere in the case until they had lost it, and came to file their motion for a new trial herein. No reason is urged, or known to exist, why such allegation was not lodged in the answer of defendants. They recognized that this statute was being invoked by plaintiff, because, more than a year before the trial, they filed a motion to strike from plaintiff's petition the parts thereof which were bottomed upon this statute. Our practice is settled that ordinarily a constitutional question must be lodged in a case as soon as is procedurally possible after the statute, order, judgment, matter or thing alleged to be unconstitutional appears in the case. [Barber Asphalt Paving Co. v. Ridge, 169 Mo. l. c. 387; Lohmeyer v. Cordage Co., 214 Mo. 685; Miller v. Connor, 250 Mo. 677.] A party may not wait till he has lost the case and then in contravention of a statute and the Constitution itself and to the cluttering up and confusion of the courts, pick and choose his appellate forum by a be-

*Unconstitutionality of Statute Untimely Raised.*

lated constitutional question dragged by its very heels into the case.

III.   It is strenuously urged by defendants that section 7843 does not apply to the facts in this case so as to allow a recovery thereon. Plaintiff contends that he sued both under the statute and at common law.   He did, and we might add, that he also sued under an ordinance of Kansas City.   But he put in no evidence of this ordinance, so it falls out of the case.   He did not go to the jury upon common-law negligence, so for the present discussion it falls out of the case.   He relied upon section 7843 and elected tacitly at least to go to the jury thereon, since he offered no instructions and put in no evidence of common-law negligence unless (and upon the facts here and the view we take of the case we do not need to discuss this phase) the rule of *res ipsa loquitur* applies and bridges the break in the case made by lack of evidence of any specific omission of duty on defendants' part.

*Structure: As Used In Statute: Does Not Include Hoist.*

Section 7843, the applicability of which is so seriously questioned, is as follows:

"All scaffolds or structures used in or for the erection, repairing or taking down of any kind of building shall be well and safely supported, and of sufficient width, and so secured as to insure the safety of persons working thereon, or passing under or about the same, against the falling thereof, or the falling of such materials or articles as may be used, placed or deposited thereon.   All persons engaged in the erection, repairing or taking down of any kind of building shall exercise due caution and care so as to prevent injury or accident to those at work or near by."

It is apparent if not conceded that the thing which broke and fell here was a hoist, which is defined to be

an "apparatus for lifting goods" (Webster's Dictionary), and that it was not a scaffold. Plaintiff seemingly concedes that it is not a scaffold, but while so conceding contends that it is a "*structure*," and such a one as is embraced within the language of the above section. Defendants just as earnestly contend that the mechanism which broke and fell and hurt plaintiff is not within the intendment of the above statute. The frank concession of plaintiff's counsel and our own views, based on the respective definitions of these two words, considered (Webster's Dictionary; 35 Cyc. 797), we think we may safely eliminate any question of whether a hoist or "an apparatus for lifting goods" is a scaffold within the contemplation of said section 7843. [5 Labatt, Master & Servant, sec. 1843.] But is it a "structure" within the meaning of this section? If it is, other things being equal, we ought to affirm the case.

Our Missouri act passed in 1891 was almost the pioneer essay into this field of so-called safety-of-labor-legislation. It is apparent that our Legislature had in mind such structures as those upon which men stood and worked—the context, we think, shows this. Later statutes passed by other States, for the most part specifically mention *hoists*. [Cf. Wisconsin, Laws 1901, chap. 257; Illinois, Laws 1907, p. 312; Indiana, Laws 1903, p. 151; Kansas, sec. 4684, R. S. 1909; Nebraska, Comp. Stat. 1911, sec. 37930; New York, Laws 1911, chap. 693; Ohio Gen. Code, sec. 12593; Oklahoma, Laws 1907-8, p. 519.] The fact that the legislatures of the above States and others, saw fit specifically to write into their statutes the word *hoists,* is at least persuasive toward the view that there existed likewise in the legislative mind the thought that the designation "scaffold or structure" did not include hoists, lifts and elevators. The language of the New York statute is a fair type of all

the others mentioned. The language used in the New York statute is, so far as here pertinent, as follows:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering, or painting of a house, building, or structure, shall not furnish or erect, or cause to be furnished or erected, for the performance of such labor, scaffolding, hoist, stays, ladders, or other mechanical contrivances which are unsafe, unsuitable, or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

Much difficulty seems to have been encountered in determining what is a "structure" within the purview of that part of the New York statute which applies the provisions thereof to buildings and *structures*, but obviously no difficulties have arisen therein touching any distinction as between a *scaffold* and a *hoist*. In this sense in New York and elsewhere the word structure has been broadly construed, so that a "waterworks system" (Kosidowski v. Milwaukee, 152 Wis. 223); "a street railroad car" (Caddy v. Interborough R. T. Co., 195 N. Y. 415); a "canal" (Pacific Rolling Mill Co. v. Bear Valley Co., 120 Cal. 94); a "fence" (Karasek v. Peier, 22 Wash. 419); a "mine" (Helm v. Chapman, 66 Cal. 291); a "ship" (Chaffee v. Union Dry Dock Co., 73 N. Y. Supp. 908); a "telephone line" (Forbes v. Electric Co., 19 Ore. 61); a "railway" (Powder Co. v. Railroad, 42 Fed. 470); an "aqueduct" (Nash v. Commonwealth, 174 Mass. 335); a "bay-window" (State v. Kean, 69 N. H. 122); and many other artificially constructed contrivances have respectively been adjudged to be "structures" to which the duty of providing safe "scaffolds, hoists," etc., applied under these statutes.

We have been cited to no case and our own researches have found for us none, wherein a structure

has been ruled to include a hoist. It is plain that it does include by the use of the words "scaffolds or structures" all stationary platforms, staging, trestles and other similar false work used in erecting, or in tearing down, buildings of any kind, in addition to the contrivance connoted by the use of the general word *scaffold*. [Convey v. Finn, 114 N. Y. Supp. 864; Nixon v. Thompson-Starrett Co., 115 N. Y. Supp. 130; Chaffee v. Union Dry Dock Co., 73 N. Y. Supp. 908; Swenson v. Mfg. Co., 186 N. Y. 555; McLaughlin v. Eidlitz, 64 N. Y. Supp. 193; Anderson v. Milliken Bros., 194 N. Y. 521; Madden v. Hughes, 185 N. Y. 466; 5 Labatt, Master & Servant, p. 5866.]

Moreover, as stated above, we think it is obvious from the very context of said section 7843 that in the clause "scaffolds or structures," the last word is *ejusdem generis,* and said clause is to be construed as meaning scaffolds, or contrivances and appliances of similar use and nature to scaffolds, viz., platforms, staging, trestles of whatever kind and ladders supporting planks. [See cases supra.] This view by the very clearest analogous reasoning was taken in the St. Louis Court of Appeals in the case of Loehring v. Construction Co., 118 Mo. App. 163. This was a case wherein (to quote the language of the opinion itself) "the appellant stepped on a board or plank twelve inches wide and two inches thick, laid on the topmost end of four-by-four-inch supports, standing perpendicular, the bottoms of which rested upon 'outriggers' projecting from the building. This plate on top of the four-by-four-inch uprights, was wedged between the top of the uprights and the under surface of the floor girders of the fifth floor, was adjacent to the partition framework of said fifth floor, and furnished a convenient place for workmen to step upon when moving about in proximity thereto. He had gone to the fifth story in the performance of a task and had

occasion to pass from one part of that story to another. The floor was not laid and he had the choice of walking on an iron beam three inches wide, five stories above the ground, or on a board twelve inches wide. He chose the latter. It slipped from its position and he was injured.''

Upon this state of facts the learned judge who wrote the opinion, after quoting said section 7843 supra, nevertheless at page 182 of his opinion said:

''It will be noted that the requirements of said section in so far as material here, are: 'Scaffolds . . . used in the erection . . . of any building, shall be . . . safely supported and of sufficient width, and so secured as to insure the safety of persons walking thereon or passing under or about the same against the falling thereof.' The statute means what it says. Its purpose is to secure the safety of 'persons walking thereon' or 'passing under or about the same against the falling thereof.' It is sufficient to say that the appellant was not 'walking thereon,' nor was he 'passing under or about the same' within the meaning of the statute. The scaffold was on the outside of the building and for him to have been 'walking thereon' within the meaning of the statute, he should have been on the scaffold, not on a mere contrivance serving as a support, in no sense intended to be walked upon, and to bring himself within the pale of its provisions, and recover for injuries received while 'passing under or about the same' on the theory of negligence *per se,* he should show that he was 'passing under or about the same' and was injured by reason of causes other than his own fault in subjecting such portion of it to an improper use and for which use it was not intended. He was inside the building, walking on a contrivance as much as twelve feet from the scaffold, which contrivance was parcel of its support and was constructed not as a scaffold,

as plaintiff well knew, but for no other purpose than as a support thereto. It would be preposterous to say that by this enactment pertaining to the sufficiency of the scaffold as a scaffold, that the Legislature intended that every part and parcel of it, far removed from the contemplated structure, should be made so secure as to sustain a man's weight when using it for a purpose wholly foreign to its erection.''

It fairly follows we think that a hoist is neither a scaffold nor a structure within the meaning of section 7843, and under the facts here. If this is not true, then the broad construction which plaintiff's learned counsel contend should be put upon the word ''structures,'' as it is used in said section 7843, would require the roof, walls, partitions, window-frames and door jambs and every other component part of a building under construction, destruction or repair, wherever such part is composed of as many as two bricks, two stones, or two planks ''artificially put together in some definite manner'' (Favro v. State, 46 S. W. 932), to be ''so secured as to insure the safety of persons working thereon, or passing under or about the same, against the falling thereof, or the falling of such materials or articles [e. g., bricks, planks, spikes, bolts and tools] as may be used, placed or deposited thereon.'' In short, so broad a construction would serve to make this section applicable to practically every conceivable or possible casualty, which could occur in any building or re-building operation of whatever sort.

Conceding that it has been said touching some of the provisions of this same act, that such laws are highly remedial (Simpson v. Witte Iron Works Co., 249 Mo. 376), yet we are not permitted to legislate judicially. To hold that a hoist is a structure would be to trespass upon the function of the lawmakers. If there is any liability in the case it must arise from the violation of what is commonly called a common-law

duty, and be bottomed upon a negligent performance of that duty.  Therefore the demurrer to the evidence ought to have been sustained, upon the case made, bottomed upon the statute.

IV.  As the case for the error noted must be reversed, we take occasion to discuss briefly whether it

Testimony: Cause of Injury.

was error to permit the expert medical witness, Dr. Murphy, to testify that "a blow of that character could have caused insanity."  The witness never saw the wound and did not see or examine the plaintiff till long subsequent to the happening of the injury to his head.  He was testifying upon the basis of an examination made nearly a year later and upon a hypothetical question.  The issue for the jury was not the insanity of plaintiff, for that we understand both sides to concede; nor was it the depression in his head, for there is no serious dispute as to the existence of that depression; but the issue was whether the depression, which the experts had the right to say might bring about insanity, was congenital, or whether it was caused by the injury.  This was the chief *bone* of contention and the main issue for the jury.  Let us look to the analytical sources of the rule to see if this was error.

This phase of the case presents no peculiar or mountainous difficulty.  The general rule is that a medical expert will not be allowed to invade the province of the jury and substitute his reasoning and conclusions for the reasoning and conclusions of the jury upon the issue or issues before the triers of fact. [Castanie v. Railroad, 249 Mo. 192; DeMaet v. Storage Co., 231 Mo. 615; Glasgow v. Railroad, 191 Mo. 347; Roscoe v. Railroad, 202 Mo. 576.]  For example, the medical expert in a will case may tell the jury whether certain symptoms betoken insanity, but he may not tell the jury whether a person having such

symptoms and *ergo* presumably having such insanity is or is not too insane to be capable of making a will; for in such case the issue is: Did the testator have *sufficient mental capacity to make a will?* Neither will a medical expert in a criminal prosecution be allowed to state whether the subject of the inquiry had mental capacity sufficient to know right from wrong, or to form a specific criminal intent to an extent rendering him amenable for his crimes. He may tell the jury his opinion of whether a scar upon flesh or bone is congenital or inflicted, but clearly he may not tell the jury from a hypothetical question long after the healing of the wound, which he never saw, what specific hurt caused the scar *when that is the issue.* In short, he may not say whether a conceded condition is the result of the injury proven, where the producing cause thereof is alone in issue. He undoubtedly may say, however, that a given cause might bring about a given effect, but not that it will do so, or that in a given case then at issue before the triers of fact, it did bring it about. So, the witness could say whether in his opinion the depression was congenital or inflicted; so also whether if inflicted by a fall or a blow it was possible for it to cause insanity. He could not say that insanity inevitably would follow or that it did follow the very blow in issue, or that the identical fall or blow sharply in issue caused it. This rule is true generally, we think. If it is not, then the facts which to an extent make this case *sui generis,* make it true here.

It results that this case must be reversed and remanded to be retried, if plaintiff is so advised, in conformity with the views expressed herein. Let this be done. All concur.