Edward L. BOLLINGER, Deceased, et al., Respondents,

v.

MAJOR SHEET METAL COMPANY, Employer,

and

Truck Insurance Exchange, Insurer, Appellants.

No. WD 34235.

Missouri Court of Appeals, Western District.

Feb. 7, 1984.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied March 27, 1984.

Application to Transfer Denied May 15, 1984.

Richard H. Heilbron, Heilbron & Powell, Kansas City, for appellants.

Michael W. Manners, Paden, Welch, Martin, Albano & Graeff, P.C., Independence, Catherine J. Barrie, Jefferson City, for respondents.

Before TURNAGE, C.J., and DIXON and LOWENSTEIN, JJ.

TURNAGE, Chief Judge.

The widow and minor children of Edward Bollinger filed a claim for Workers' Compensation as a result of Edward's death while on the job. There was no dispute concerning the payment of compensation for the death, but the parties disagreed as to whether or not the compensation should be increased by 15% as provided in § 287.-

120(4) RSMo.1978.[1] The administrative law judge found the award should not be increased but on review the Labor and Industrial Relations Commission found that the 15% penalty should be added because of a violation by the employer of Section 292.-090. On appeal to the circuit court the award made by the Commission was affirmed.

The parties stipulated to the facts and, thus, there is no dispute concerning the circumstances of Edward's death. Edward was employed by Major Sheet Metal Company and was supervising work on the roof of a power plant which was being remodeled for use as a community center. On December 11, 1978, Edward and another Major employee were on the roof of the plant preparing to cut a hole in the roof to accommodate duct work. Edward scooped snow from the roof and located the position of the hole by use of plans, shop drawings, and specifications. A gasoline powered saw was used to cut the hole. The roof where the hole was cut was composed of unsupported concrete slabs.

No support platforms or scaffolding had been erected either on the roof or under it. When Edward stepped on a portion of the roof near the freshly cut hole a slab suddenly gave way and he fell about 30 feet. As a result of the fall Edward sustained severe head injuries which resulted in his death shortly thereafter.

Section 287.120(4) provides that when an injury is caused by the failure of the employer to comply with any statute, the compensation and death benefit provided by the Workers' Compensation chapter shall be increased by 15%. The Commission found that the employer violated § 292.090. That Section provides:

> All scaffolds or structures used in or for the erection, repairing or taking down of any kind of building shall be well and safely supported, and of sufficient width, and so secured as to insure the safety of persons working thereon, or passing under or about the same, against the falling therein, or the falling of such materials

or articles as may be used, placed or deposited thereon. All persons engaged in the erection, repairing or taking down of any kind of building shall exercise due caution and care so as to prevent injury or accident to those at work or nearby.

■ The Commission found that the roof of the building on which Edward was working was a scaffold within the meaning of § 292.090. In reviewing a decision by the Commission where the facts are not disputed, the award that should be entered by the Commission becomes a question of law and the Commission's ruling is not binding on the appellate court. *Ikerman v. Koch*, 580 S.W.2d 273, 278[1, 2] (Mo. banc 1979). Thus, the question to be resolved on this appeal is the question of law of whether or not the roof where Edward was working was a scaffold within the meaning of § 292.090. To determine the meaning of § 292.090 this court must ascertain the intent of the legislature from the language used and take the words used in the statute in their plain and ordinary meaning. *State ex rel. Dravo Corporation v. Spradling*, 515 S.W.2d 512, 517[5, 6] (Mo.1974).

■ Section 292.090 provides in relevant part that all scaffolds or structures used for the repairing of any kind of building shall be well and safely supported. The language of the statute and the reasoning of earlier cases suggest that a roof was not intended to be a scaffold or a structure within the meaning of § 292.090.

"Scaffold" is commonly defined as a temporary or movable platform. Webster's 3rd New Int. Dictionary, 1971. Thus, the term "scaffold" as used in the statute refers to a temporary or movable platform which is used in the repair of any kind of building. It is apparent that the word "scaffold" is used to distinguish the temporary or movable platform from the building which is being repaired. Thus, the roof of the building from which Bollinger fell was not a scaffold within the meaning of § 292.090.

1. All sectional references are to Missouri's Re-    vised Statutes, 1978.

It is also clear that the roof of the building on which Bollinger was working was not a structure within the meaning of § 292.090. The word "structure" is used in the statute in contradistinction to the term "building" since the statute refers to a structure used for the erection or repair of any kind of building. It is clear that the legislature referred to two different objects—the structure being used to repair a building and the building being repaired. There is nothing in the statute which addresses the condition or safety of the building being repaired. Because the statute addresses only the features of a structure being used to repair any kind of building, and does not contain any requirement as to the condition of the building being repaired, it cannot be said that the statute refers to the building being repaired.

The court considered this statute in *Deiner v. Sutermeister*, 266 Mo. 505, 178 S.W. 757, 761 (1915), and held that a hoist used to lift stone was not a "structure" within the meaning of the statute. In what might be considered dictum, the court rejected a broad definition of the word "structure," reasoning that if a hoist were a structure the statute would:

> require the roof, walls, partitions, window frames and door jambs, and every other component part of a building under construction, destruction, or repair, wherever such part is composed of as many as two bricks, two stones, or two planks 'artificially put together in some definite manner' ... to be so secured as to insure the safety of persons working thereon... In short, so broad a construction would serve to make this section applicable to practically every conceivable or possible casualty, which could occur in any building or rebuilding operation of whatever sort.

While the court conceded that the statute was remedial in purpose, it emphasized that it was not permitted to legislate judicially. This court shares the *Deiner* court's reluctance to legislate. The legislature, if it desires, is free to impose requirements for safety features to be incorporated in a building under repair.

The Commission found that the roof which supported Edward while he worked became a scaffold or, in other words, a temporary, movable platform. This is not possible since the roof was an integral part of the building. It did not become a temporary or movable platform merely because work was being performed on it.

Edward's heirs contend that *Carpenter v. Burmeister*, 217 Mo.App. 104, 273 S.W. 418 (1925), supports the Commission's finding. In *Carpenter* the court found that sheathing boards used by bricklayers constituted a scaffold within the meaning of § 292.090 even though the sheathing boards were intended to become a permanent part of the building. However, the court carefully pointed out that at the time of the accident the boards were used solely as a platform for the bricklayers. 273 S.W. at 419. The court further noted that the boards had not been attached to the building and at the time of the accident constituted a temporary scaffold. The case at bar can be distinguished from *Carpenter* since the roof from which Edward Bollinger fell was a permanent part of the building.

The heirs also contend that the evidence shows a violation of § 292.480, which provides in pertinent part that all scaffolds, hoists, stays, ladders, supports, or other mechanical contrivances, erected or constructed for use in the repairing of any building shall be erected and constructed in a suitable and proper manner. They rely upon two Illinois cases which construe a statute almost identical to § 292.480. In *Louis v. Barenfanger*, 39 Ill.2d 445, 236 N.E.2d 724 (1968), and *St. John v. R.R. Donnelley & Sons Co., Inc.*, 54 Ill.2d 271, 296 N.E.2d 740 (1973), the court held that a roof which supported workers could be a scaffold. This court finds the Illinois cases unpersuasive. Section 292.480 clearly provides that all scaffolds erected by any person for use in the repair of any building should be constructed in a safe manner. Certainly the roof on which Edward was working was not constructed by Major for

use in repairing the power plant. Under the plain language of § 292.480 the roof could not be a scaffold. Likewise, the roof could not be considered as a temporary or movable platform so as to constitute a scaffold or structure under § 292.090.

The judgment of the circuit court is reversed. This cause is remanded with directions for the court to enter judgment reversing the award of the Commission and to deny the 15% penalty.

LOWENSTEIN, J., concurs.

DIXON, J., dissents in separate opinion.

DIXON, Judge, dissenting.

Because Section 292.090, RSMo 1978, is a remedial statute intended to provide a safe workplace and should be liberally construed to effect its purpose, I, therefore, dissent from the majority opinion.

Section 292.090 was enacted in 1891. Laws of Mo.1891, p. 159. The title to the act was "AN ACT relating to manufacturing, mechanical, mercantile and other establishments and places, and the employment, safety, health and work hours of employes." The title to the act, which may be considered in determining the legislative purpose intended, *Bullington v. State*, 459 S.W.2d 334 (Mo.1970), as well as the context of the act, shows that the legislative purpose was to provide various safeguards in the workplace for employees and workers. The statute is in derogation of the common law. Section 1.010, RSMo 1978, directs the interpretation of such a statute in the following language:

> [N]o act of the general assembly or law of this state shall be held to be invalid, or limited in its scope or effect by the courts of this state, for the reason that it is in derogation of, or in conflict with, the common law, or with such statutes or acts of parliament; but all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof. (R.S. 1939, § 645, as amended L.1957 p. 587 § 1).

Prior to the adoption of the quoted language of § 1.010 by the Laws of 1917 p. 324, the courts had universally followed a rule of strict construction of statutes in derogation of the common law. The statute nullified these decisions as the Supreme Court noted in *Women's Christian Association of Kansas City v. Brown*, 354 Mo. 700, 707, 190 S.W.2d 900, 904 (1945). There may be statements in the case law aberrant to the statutory rule, but they can have no effect in the face of the statutory language.

Thus the primary canon or rule of construction is to read the language of the statute liberally to effectuate the purpose of the law. The legislature is also presumed to have acted with full knowledge of the relevant facts and existing conditions in the enactment of legislation. *Wilson v. McNeal*, 575 S.W.2d 802, 810 (Mo.App. 1978).

The two canons above stated are sometimes merged in a single statement, to-wit: Statutes should be construed in light of the goal sought and the conditions the statute sought to remedy. *State ex rel. Missouri Power & Light Co. v. Riley*, 546 S.W.2d 792, 796 (Mo.App.1977).

Other ancillary rules of construction have application in the instant case. The connective *"or"* has been defined in our case law.

> [T]he word "or" is disjunctive in its nature and in its ordinary sense marks an alternative which generally corresponds to the word "either", *Council Plaza Redevelopment Corp. v. Duffey* [439 S.W.2d 526 (Mo.1969)], supra; *Jenkins v. Meyer*, 380 S.W.2d 315 (Mo.1964); *Horton v. Estate of Elmore*, 420 S.W.2d 48 (Mo.App.1967); *Sheets v. Thomann*, 336 S.W.2d 701 (Mo.App.1960), ....

*Hawkins v. Hawkins*, 511 S.W.2d 811, 812 (Mo.1974).

The authorities also support the interchangeability of "or" with the connective "and" when the sense of the statute requires it. *Hawkins, supra.*

Moreover, it is a general rule of statutory construction that

'meaning be given to each word used in a legislative enactment, insofar as possible, and one word of a statute should not be considered a needless repetition of another.' *State ex rel. Thompson-Stearns-Roger v. Schaffner*, 489 S.W.2d 207 (Mo. 1973). *See also Stewart v. Johnson*, 398 S.W.2d 850 (Mo.1966).

*Iora v. Director of Revenue*, 618 S.W.2d 630, 633 (Mo.1981).

It is beyond cavil that the purpose of the statute was to provide safety for workmen in the erection, repair, and demolition of buildings. It is also common knowledge that workmen engaged in that labor use scaffolds in the sense of temporary or moveable platforms external to the work *and also* the building or structure in various states of completion. Workmen use the skeleton of the building as it is erected to support themselves and the materials and machinery to forward the work. In many instances scaffolds are impractical or impossible to utilize for such support. The commonplace scene of workmen clambering over the work in progress is so frequently encountered in everyday life that it must be considered to be within the presumed knowledge of the legislature. In physical fact some types of alteration and repair and, certainly, repairs and alterations to roofs may not be accomplished without utilization of the roof and its supporting structure to undertake the repairs.

When the words "scaffold or structure" are read in the light of the purpose of the statute and the facts and circumstances prevalent in the workplace, the legislature must have intended to include the structure being repaired, erected, or demolished within the meaning of structure. To say otherwise is to say that the legislature, with knowledge of potential harm to workmen, intended to exclude the building being worked on from the meaning of "structure," which would defeat in large measure the legislative purpose to provide safety for workmen.

The majority asserts that structure does not mean "building," but fails to explain what was meant by the word, "structure,"

used alternatively to "scaffold." The majority thus fails to give meaning to each word of the statute and fails to effectuate the purpose of the statute by excluding from the statute's operation practices of workmen in utilizing the structure itself for erection, repair, and demolition. These practices and customs are presumed to be part of the conditions that the legislature was aware of and sought to make safe for the workmen. The attempted distinction of *Carpenter v. Burmeister*, 217 Mo.App. 104, 273 S.W. 418 (1925), by utilizing the term "scaffold" is without substance. The "structure" the workmen were using in *Carpenter* was composed of two elements, the boards *and* the structure they rested upon—the walls of the incomplete building. The boards themselves could not constitute a "scaffold," for they could not float in the air. If the walls had collapsed and the workmen been injured thereby, without any failure of the boards, the result should be the same.

In the instant case, the workmen were directed to cut the hole in the roof, which could only be accomplished by utilizing the roof as a support for the men while working. The "structure" utilized—the building—was not sufficiently braced, and the roof collapsed, causing the death of claimant's decedent. Section 292.090 was violated, and the award was properly enhanced by the penalty provided by the Workers Compensation Act. The judgment of the circuit court affirming the Industrial Commission should be affirmed.